## HERRING v. STANNUS.

### Opinion delivered June 29, 1925.

1. CONSTITUTIONAL LAW—POLICE POWER.—Every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property or injurious to the rights of the community.

2. MUNICIPAL CORPORATIONS—REGULATION OF FILLING STATIONS.—In view of the early and late hours in which filling stations are maintained, the nature of the business itself, and their effect upon the value of adjacent residential property, the location of such filling stations is a proper subject of municipal regulation.

3. MUNICIPAL CORPORATIONS—ZONING REGULATIONS.—Acts Sp. Session 1924, p. 60, authorizing cities of the first class to establish zones limiting the character of buildings that may be erected therein, and providing that when the council shall have laid off such zones it shall not be lawful to construct or carry on any unauthorized business within a zone unless with special permission of the council, as well as an ordinance passed pursuant thereto, *held* valid.

4. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—DISCRETION OF COUNCIL.—Where a zoning ordinance prohibited the erection of filling stations within the residential district except where the city council might, after a hearing, grant a permit therefor, and the evidence showed that there were already in the immediate vicinity three grocery stores, a meat market, a drug store, a cleaning and pressing shop, a bakery and another filling station, it was not an abuse of the council's discretion to permit a filling station to be erected.

5. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—DISCRETION OF COUNCIL.—Under a zoning ordinance which permitted the city council, after a hearing, to grant a permit for a filling station within a residential zone, it was not an abuse of discretion for the

council to direct a hearing before a committee where the council adopted the recommendation of the committee in granting a permit.

Appeal from Pulaski Chancery Court; *A. L. Hutchins*, Chancellor, on exchange; reversed.

*Sam T. & Tom Poe* and *Louis Tarlowski*, for appellant.

*Floyd Terral* and *J. C. Marshall*, for appellee.

SMITH, J.   An extraordinary session of the 44th General Assembly passed an act numbered 6, which was approved July 1, 1924, entitled, "An act to confer on cities of the first class powers of regulating the character of buildings." Acts Sp. Session 1924, p. 60.

Sections 1 and 2 of this act read as follows:

"Section 1.   It is recognized and hereby declared that the beauty of surroundings constitutes a valuable property right which should be protected by law, and that this is particularly true  of residential sections where people have established their homes.

"Section 2.   Cities of the first class are hereby authorized to establish zones limiting the character of buildings that may be erected therein, and that such zones may be of three classes; first, portions of the city where manufacturing establishments may be erected or conducted; second, portions of the city where business other than manufacturing may be carried on; third, portions of the city set apart for residences."

By section 3 it is provided that when the city council shall have laid off such zones it shall not be lawful for any one to construct or carry on within a given zone any business not authorized by the ordinance of the city establishing the zones, unless special permission is granted by the council of said city, or by a commission which it may. create for the purpose of determining whether an exception shall be made in the particular instance, but that such exception shall be made only for good cause, and in case of abuse of this discretion by the council the adjacent property owners are given the

right to appeal to the chancery court to protect their property from depreciation by reason of the setting up of such exceptional business within the zone.

Section 4 authorizes the city council to limit the height of buildings in the zones created by it.

Pursuant to the authority conferred by this statute, the council of the city of Little Rock passed an ordinance numbered 3577, entitled, "An ordinance regulating the building, construction or erection of gasoline and oil filling stations, automobile repair garages, store buildings, apartment houses, any other building for business purposes, and for other purposes."

The preamble to this ordinance reads as follows:

"Whereas, it appears to the city council of the city of Little Rock that the growth and population of this city makes it necessary for the purpose of promoting health, safety, morals or the general welfare of the community to restrict the building of gasoline and oil filling stations, automobile repair garages, apartment houses and all other buildings erected for business purposes within what is known as the residence district of the city of Little Rock, and

"Whereas, by legislative enactment recently adopted, cities of the first class are authorized to separate, if need be, business from residence property."

By section 1 of the ordinance it is made unlawful to build, construct or erect "any gasoline and oil filling station where gasoline and oil will be sold; to build, construct or erect any automobile repair garage or any store building, or to erect any apartment house, or to erect or build for business purposes, any other building in what is commonly known as the residence district of the city of Little Rock outside of the fire limits hereinafter specified, until, after having first filed an application with the city engineer for said permit along with all plans, specifications, and the payment of a fee of $5.00 to cover all costs of printing notices, etc.; said fee to be paid to the city collector." Section 2 requires the city

engineer to publish notice of any application filed under section 1. Section 3 provides that after proof of publication of the application for the permit has been made the engineer shall issue the permit, unless otherwise prohibited by law, "except where petition is filed by one or more citizens, owners of property in the immediate vicinity protesting the issuance of said permit, and showing that, if said permit is granted and said building is erected, the conduct of same will tend to decrease the value of property in the immediate vicinity for residence purposes, said petition to be subscribed and sworn to by the complaining property owner or owners." Section 4 reads as follows: "Where one or more protests are filed with the city engineer against the building of any filling station, automobile repair garage, storehouse, apartment house or other business building, within the residence districts of Little Rock, within thirty days after the receipt of application for same, the city engineer shall refuse to grant said permit and refer same to the city council of the city of Little Rock, which shall, after a hearing upon petition for and against such building, grant or refuse issuance of permit as it may deem best." Section 5 defines the fire limits referred to in section 1, and section 6 prescribes the penalty for a violation of the ordinance.

After the passage of the ordinance it was amended by striking out the words "apartment house" wherever they appeared in the ordinance.

After the passage of this ordinance, appellants made application for a permit to erect a filling station at the southwest corner of Wright Avenue and Wolfe Street in the city of Little Rock, and protests were immediately filed by property owners in the vicinity. The matter was referred to the civic affairs committee of the city council, and this committee of the council unanimously recommended to the council that the permit be granted. This report was approved by the unanimous vote of the council, but was vetoed by the

mayor. Later the council passed the resolution granting the permit over the veto of the mayor. Thereafter the property owners who had protested against the issuance of the permit filed this suit in the chancery court, in which they prayed that the issuance of the permit be enjoined. In this suit the provisions of the ordinance were set up, and it was alleged that no good cause had been shown as required by the ordinance for issuing the permit, and that the council had abused its discretion in granting it, and its cancellation was prayed.

Separate answers were filed by both the city and the petitioners for the permit. The answer of the city denied that the permit had been granted without good cause being shown. The answer of the petitioners for the permit likewise denied that the permit had been granted without good cause being shown, and, in addition, alleged that the ordinance and the statute under which it was passed were both unconstitutional for various reasons which were set up.

The court below held that both the ordinance and the statute were constitutional, and also held that the council of the city had abused its discretion in granting the permit, and decreed its cancellation, and enjoined petitioners from erecting the proposed filling station, and this appeal is from that decree.

The first question which naturally presents itself is the constitutionality of the statute and the ordinance passed pursuant thereto. Appellants insist that it is unconstitutional for the reasons that it operates to deprive them of their liberty and property without due process of law; that the ordinance takes private property for public use without compensation; that it abridges the privileges and immunities of citizens of the United States and denies them the equal protection of the law; that it attempts to make legal the taking of private property for public use without compensation and assumes to delegate legislative powers to private persons.

These grave questions have in cases comparatively recent engaged the attention of many courts under facts more or less similar to those of the instant case, and the cases passing upon these questions have, through the industry of respective counsel, been collated and cited. After considering these cases the same differences of opinion are found to exist among the judges of this court as are reflected in the various opinions which we have consulted.

The automobile has brought into existence many problems incident to its operation, and it is recognized by all the courts that filling stations, where oil and gasoline may be obtained, have become public necessities. It is also generally recognized that these stations are proper subjects for regulation by the States and the cities and towns thereof in the exercise of the police power. The differences arise out .of the manner in which and the extent to which these regulations may be extended. It is becoming more and more common to effect this regulation by means of· zoning ordinances, under which filling stations are excluded from certain areas. It is also quite common for these zoning ordinances to exclude certain other buildings from the restricted areas.

A well-considered case on the subject is that of *Spann* v. *Dallas,* 235 S. W. 513, and in 19 A. L. R. 1387 this case is extensively annotated. A number of later cases which have also been annotated are there cited.

In this case of *Spann* v. *Dallas,* the Supreme Court of Texas held an ordinance of the city of Dallas, which forbade the erection of a building as a store in their residence district without the consent of neighboring property owners and the approval of the building inspector of the city, to be unconstitutional as depriving the owner of his property without due process of law. After citing, in the note to this case, a number of annotated cases on the subject, the annotator comments that for some time courts have been taking more

and more liberal views of the zoning power, and that there were already cases which consider the police power broad enough to exclude business buildings from residential districts.

It would be an endless task, if not a work of supercrogation, to attempt a review of the many cases which have dealt with the principles here involved. In fact, there appears to be but little difference in the enunciation of the applicable principles, the difficulty and the differences growing out of the application of these principles to the facts of particular cases.

Another case, which was decided almost simultaneously with the Texas case, was that of *City of Des Moines* v. *Manhattan Oil Co.*, 184 N. W. 823, 23 A. L. R. 1322. It appears, from the synopsis of the briefs of the opposing counsel in that case, that the leading cases dealing with the subject were called to the attention of the court, and the opinion of the court reflects the maturest consideration of those cases. In this last cited case the validity of a statute permitting the establishment of residential districts in municipalities, and from which business houses were excluded, was involved. All of the objections to the ordinance here under review were there raised, but the Supreme Court of Iowa there decided that the statute was a valid exercise of the State's police power, and that the statute was not unconstitutional for any of the various reasons urged against it.

We prefer to follow this Iowa case, rather than the Texas case, because we think it sounder in reason and in conformity with principles which this court has announced and approved.

In its opinion the Supreme Court of Iowa said: "'With the wealth of precedent cited by the appellee as upholding the sacredness of constitutional guaranties of life, liberty, property, due process of law, and equal protection of the laws, we have no quarrel; but, construing the statute in question, as we do, as one of police regulation, it is entirely consistent with those guaranties. The

statute being constitutional, the ordinance adopted pursuant thereto cannot be held invalid. The power of regulation is not confined to the suppression of vice, or promotion of health. In the language of McKenna, J., in *Bacon* v. *Walker*, 204 U. S. 318, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289: 'It extends to so dealing with the conditions which exist in the State as to bring out of them the greatest welfare of its people.' ''

In this same opinion the court quoted with approval the following declaration of the law from the opinion of Chief Justice Shaw in the case of *Commonwealth* v. *Alger*, 7 Cush. 53: '' 'We think it is a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, or injurious to the rights of the community. * * * Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the Legislature, under the governing * * * power vested in them by the Constitution, may think necessary and expedient. This is very different from the right of eminent domain.' ''

This Massachusetts case is one which has many times been cited by textwriters and judges in discussing the police power of the States.

The case of *Ex parte Foote*, 70 Ark. 12, involved a town ordinance which made it unlawful to stand a stallion within the limits of the municipality. This ordinance was upheld as a valid exercise of the police power, and JUSTICE BATTLE, speaking for the court, said: ''There are two kinds of public nuisances. One is that class of aggravated wrongs or injuries which affect the 'morality of mankind, and are in derogation of public

morals and decency,' and, being *malum in se,* are nuisances irrespective of their location and results. The other is that class of acts, exercise of occupations or trades and use of property which become nuisances by reason of their location or surrounding. To constitute a nuisance in the latter class, the act or thing complained of must be in a public place, or so extensive in its consequences as to have a common effect upon many, as distinguished from a few. Where it is in a city or town, where many are congregated and have a right to be, and produces material annoyance, inconvenience discomfort, or injury to the residents in the vicinity, it is a public nuisance of the latter class."

In the case of *Little Rock* v. *Reinman,* 107 Ark. 174, a municipal ordinance excluding livery stables from a certain defined area within the corporate limits was upheld as a valid exercise of the police power, and that holding was affirmed by the Supreme Court of the United States. 237 U. S. 171, 35 Sup. Ct. Rep. 511, 59 L. Ed. 900. In affirming that case, Justice Pitney, for the Supreme Court of the United States, said: "Therefore the argument that a livery stable is not a nuisance *per se,* which is much insisted upon by plaintiffs in error, is beside the question. Granting that it is not nuisance *per se,* it is clearly within the police power of the State to regulate the business, and to that end to declare that in particular circumstances and in particular localities a livery stable shall be deemed a nuisance in fact and in law, provided this power is not exerted arbitrarily, or with unjust discrimination, so as to infringe upon rights guaranteed by the Fourteenth Amendment. For no question is made, and we think none could reasonably be made, but that the general subject of the regulation of livery stables, with respect to their location and the manner in which they are to be conducted in a thickly populated city, is well within the range of the power of the State to legislate for the health and general welfare of the people. While such

regulations are subject to judicial scrutiny upon funda-
mental grounds, yet a considerable latitude of discretion·
must be accorded to the lawmaking power; and so long
as the regulation in question is not shown to be clearly
unreasonable and arbitrary, and operates uniformly
upon all persons similarly situated in the particular dis-
trict, the district itself not appearing to have been arbi-
trarily selected, it cannot be judicially declared that there
is a deprivation of property without due process of law,
or a denial of the equal protection of the laws, within the
meaning of the Fourteenth Amendment." (Citing numer-
ous cases).

A large number of witnesses testified at the hearing
before the court below, and the contrariety of opinion
was found concerning the effect of the location of a
filling station in a residential district which might have
been expected. But we think it clearly appears that the
nature of this business, and the early hours in the
morning and the late hours in the evening during which
it is operated, make it a proper subject of regulation.
There was testimony amply sufficient to support a find-
ing that the general effect of the location of a filling sta-
tion in a strictly residential section is to diminish the
demand for and the value of residence property.

It will be observed that the ordinance under review
does not wholly exclude filling stations and the other
businesses named from the residential district. The
council may, for good cause shown, grant a permit to
conduct the business in the restricted area, and the
presumption must be indulged that the council, in pass-
ing upon this question, will exercise an intelligent,
honest and impartial judgment.

It is urged that the ordinance here under review
was passed for purely aesthetic purposes, and that this
fact appears from section 1 of the statute of the State con-
ferring power to pass the ordinance on cities of the
first class, and that the police power cannot be exer-
cised for purely aesthetic purposes. Conceding — with-

out deciding — that the police power may not be exercised for purely aesthetic purposes, we dispose of the contention made by saying that we do not think the ordinance is open to that objection.

Section 1 of the statute, read by itself, would appear to support the contention, but in extracting the meaning and purpose of the statute we are not confined to the consideration of any single section. We must read the statute in its entirety, and, when so read, we think the aesthetic feature becomes a mere incident to the exercise of the power conferred.

The writer and JUSTICES HART and HUMPHREYS have therefore concluded that the ordinance and statute are constitutional as being a valid exercise of the police power, and, while some damage may result to appellants and others similarly situated, they have their compensation by participating in the general advantage of having a section of the city set apart where forbidden businesses may not encroach without permission so to do being first granted. *Wadleigh* v. *Gilman,* 28 Am. Dec. 188. And we are also of the opinion that the classification of the excluded business is not arbitrary or unreasonable.

It is however the opinion of the majority that no abuse of discretion was shown by the council in granting the permit to appellants to erect a filling station at the site in question. As we have said, it is to be presumed that the council will exercise the power conferred on it in a fair, just and reasonable manner, and its action in the instant case indicates that the power to grant or to withhold permission to erect a forbidden structure in the restricted area was properly vested in the council. The ordinance is not prohibitory, but is regulatory. Conditions vary in different portions of an area as extensive as the restricted district established by the ordinance under review, and, if any discretion is to be exercised, that right must be vested in some one, and no more appropriate agency for that purpose could

be constituted than the council of the city, where the
duty and authority to pass upon the question was vested.

The testimony discloses that three meetings of the
civic affairs committee of the council to which the peti-
tion of appellants was referred were held for the
purpose of hearing all interested parties in the matter.
This committee of the council consisted of seven mem-
bers, six of whom testified at the trial in the chancery
court. The seventh member was unable to be present
at the trial on account of illness.

These councilmen testified that, at the first meet-
ing to consider appellants' petition, a large number, if
not all, of the protestants were present personally and
by an attorney, and that a full hearing was had and
opportunity given to all to be heard who desired to be.
Two adjournments of the committee were had before a
final report was made, and appellees insist that they
should have been notified of those adjournments, so that
they might have attended, had they wished to do so;
but the councilmen testified that these adjournments
were taken before the final action was ordered at the
request of one of the protestants, and when final action
was taken they supposed that all persons who desired to
be heard had been.

These six councilmen who composed the committee
of the council and who testified in the case gave their
reasons for voting for the ordinance. These being that
they regarded the proposed location as a business site,
on account of the proximity of other business houses
adjacent thereto, and another filling station across the
street; that the proposed location was on one of the
most commonly traveled thoroughfares in that section of
the city, and they regarded the proposed site as a proper
one for a filling station. In opposition to this showing,
appellees offered testimony to the effect that, notwith-
standing there was in its immediate vicinity three
grocery stores, a meat market, a drug store, a cleaning
and pressing shop, a bakery, and another drive-in filling

station, these buildings did not in fact deprive the neighborhood of its character as a residential section, which it, in fact, was.

This was a question about which reasonable minds might differ, and did differ sharply as reflected by the testimony in the case, and the ordinance constituted the council as the tribunal to pass upon this question. But the fact — if it is a fact — that the site in issue is a residential, and not a business, location, is not conclusive of the case, for, as we have said, the ordinance does not prohibit absolutely all filling stations in all residential districts. The council, under the ordinance, may grant a permit to erect a filling station in a district which is purely residential, if good cause therefor is shown, and this is a question which addresses itself primarily to the council. The proximity or remoteness of other stations and the volume of traffic were proper matters for the council to consider, and its action is final unless we can say that the council abused its discretion. But this discretion, in so far as a discretion abides, is vested in the council, charged by law with the duty of passing on the question, and does not rest in the courts which review the council's action. *North Little Rock* v. *Rose,* 136 Ark. 298; *Pierce Oil Corporation* v. *Hope,* 127 Ark. 38.

The question is not what a member of the court might decide if the question were submitted to him as a matter of discretion, but rather is whether it can be said that the council abused its discretion, and we may not say that such was the case unless that fact clearly appears. This we are unable to say.

Counsel for appellees insist that the hearing by a committee of the council, instead of one by the council itself, was such a mistaken procedure as to show an abuse of discretion.

In answer to this contention, it may be said that no request was made that the matter be heard by the council, instead of by a committee of the council. It may be still further answered that the council as such acted

on the request for the permit and recommended that the permit be granted. This recommendation was made to and was approved by the council by a vote which was unanimous, and, when the resolution granting the permit was vetoed by the mayor, the resolution was passed over the mayor's veto by a vote which was again unanimous.

It follows, therefore, in the opinion of the majority, that the chancellor erred in holding that there had been an abuse of discretion by the council of the power vested in it by the ordinance, and the decree of the court below will therefore be reversed, and, as the complaint of appellees appears to be without equity, it will be dismissed.

MESSRS. JUSTICES HART and HUMPHREYS dissent upon the ground that an abuse of discretion on the part of the council was shown.