CARR *v.* CITY OF EL DORADO.

4-9151                                          230 S. W. 2d 485

Opinion delivered June 5, 1950.

424

*Surrey E. Gilliam, Stein & Stein, Crumpler & Eckert,* and *Herschel Friday,* for appellant.

*Jabe Hoggard, John M. Shackleford, Jr.,* and *S. Hubert Mayes,* for appellee.

LEFLAR, J. This is a bill in equity brought by appellant R. A. Carr, doing business in El Dorado, Ark., as the Yellow Cab Co., to restrain one Otis Hughes from operating taxicabs in El Dorado and to cancel a taxicab permit issued to Hughes by the city of El Dorado. Appellant's contention is that the Hughes permit was not properly approved by the City Council.

There is no real dispute concerning the facts. In applying for a permit Hughes was represented by his attorney, John M. Shackleford, Jr., son of Mayor John M. Shackleford of El Dorado. The application was in all respects in accordance with the governing statute, Ark. Stats., §§ 19-3512 to 19-3518. A hearing was held before the City Council, as prescribed by § 19-3517, on Jan. 24, 1949, and considerable testimony, both favorable and unfavorable, was presented. Mayor Shackleford and seven members of the Council—all of the councilmen except A. L. Cone—were present at the hearing. A shorthand record of the testimony was taken, and in addition the City Clerk, George Jackson, included in the minutes of the Council meeting a short summary of the testimony of each witness. The Council voted to defer action on the application until Feb. 24, 1949. At the Feb. 24 meeting, the Mayor and all eight members of the Council were present. When the vote was taken, four members of the Council voted against granting the permit, and four members, including Cone, voted to grant it. Appellant Carr, opposing the permit, protested against Cone's vote on the ground that Cone had not been present at the hearing. Mayor Shackleford overruled the protest and held that Cone's vote was proper, then the Mayor himself broke the tie by voting in favor of the permit. In due course the permit was issued and Hughes has since been operating under it.

Appellant Carr promptly brought his suit to invalidate the permit, contending (1) that Councilman Cone

was not qualified to vote because he had not heard the evidence at the Jan. 24 hearing, and that the true vote of the Council was therefore 4 to 3 against granting the permit, and (2) that Mayor Shackleford was disqualified from voting because he and his son, attorney for Hughes, were closely connected both by blood and professionally in the practice of law (as associates in the same law office).

As to (1), the evidence indicated that Cone had not read the transcript of testimony taken at the Jan. 24 hearing, but had read the summary thereof in the City Clerk's minutes, had talked to various citizens about whether the permit to Hughes ought to be granted, and had discussed the matter with another councilman before voting on it. As to (2), it appeared that Mayor Shackleford and his son were not partners in the practice of law, but only maintained a joint office, and that the Mayor had nothing to do with his son's employment by Hughes and would not receive, either directly or indirectly, any part of the $100 fee paid by Hughes to John M. Shackleford, Jr.

The Chancellor held for the defendant Hughes, that the permit was properly approved by the Council, and dismissed the complaint. Carr appeals.

(1) The legal character of official action by city councils is diverse. The concept of complete separation of powers, however it may exist in other areas of government, does not abide in the city council chamber. Primarily legislative in their functionings, city councils yet perform many acts, pass many ordinances and resolutions, that are administrative or judicial in their nature. *Scroggins* v. *Kerr, ante,* p. 137, 228 S. W. 2d 995 (Ark., Apr. 17, 1950). It is not impossible that a single aldermanic action may possess characteristics of all three of the classic departments of government — legislative, executive, and judicial.

When a city council's acts partake of the judicial character, they are commonly classified as *quasi*-judicial rather than judicial. They will seldom be subject to all

of the identical rules and limitations that apply to the conduct of courts, but will often be subject to some of these rules and limitations. *Williams* v. *Dent*, 207 Ark. 440, 181 S. W. 2d 29. What judicial procedures are to be required in a particular type of *quasi*-judicial proceeding before a city council, or in a proceeding both *quasi*-judicial and *quasi*-administrative (which might be a better classification for taxicab permit hearings held under Ark. Stats., § 19-3517) is a question not to be answered by broad statements about the requisites of judicial hearings generally, but rather by analysis of the practical function of the proceeding and the possibilities of reasonable fairness inherent in it.

That is the way the problem was dealt with in *Herring* v. *Stannus,* 169 Ark. 244, 275 S. W. 321. That case involved the validity of a permit issued by the Little Rock City Council for erection of a filling station in an area zoned for residential purposes. The governing ordinance (comparable to the governing statute in the present case) required that the Council hold a hearing at which testimony should be heard for and against the proposal, after which the Council should grant or refuse the permit. Instead of the hearing being held before the entire Council, it was held before the 7-member ''civic affairs'' committee of the Council which made its report back to the Council as a whole, after which the entire Council voted to grant the permit. Opponents brought a bill in equity contending, among other things, that this invalidated the permit. This Court held that it did not.

The practical exigencies of attending to aldermanic business in a modern city make it impossible for a city council always to conduct hearings as a court does. So long as the hearing is conducted in a manner designed reasonably to apprise Council members of the relevant facts, in a case involving issuance of a permit like that now before us, we hold there is no violation of due process of law or other constitutional requirements in the fact that some Council members who voted on issuance of the permit were not present at the hearing. Since the nature and effects of hearings before city councils and similar

bodies vary so widely, we point out that our decision in this case does not necessarily apply to all types of hearings. See *Morgan* v. *United States*, 298 U. S. 468, 56 S. Ct. 906, 80 L. Ed. 1288, and 304 U. S. 1, 58 S. Ct. 773, 82 L. Ed. 1129.

(2) As to Mayor Shackleford's participation in the approval of the permit, the Chancellor's decision for the defendant Hughes included a finding that the Mayor had no such personal interest in the case as would invalidate his vote. The state of the evidence, already summarized in this opinion, is such that we cannot say the Chancellor's finding on this point is contrary to the preponderance of the evidence.

Apart from that, it does not appear from the record that appellant raised the question of the Mayor's disqualification in proper time to take advantage of it. There is no doubt that the relationship between the Mayor and his son, John M. Shackleford, Jr., was well known to all participants in the hearing from the first. It was a patent fact. Yet the transcript shows no objection raised, no disqualification suggested, until. the present case was filed in Chancery Court. As to Councilman Cone, both the Council minutes and the stipulation of facts agreed to by the parties recite that Cone's right to vote was challenged when he voted. In neither the minutes nor the stipulation, nor elsewhere in the evidence, is there any affirmative showing that the Mayor's right to vote was questioned at the time the vote was taken.

"The disqualification of the Judge may be waived by failure to seasonably object. *Washington Fire Ins. Co.* v. *Hogan*, 139 Ark. 130, 213 S. W. 7, 5 A.L.R. 1585. We hold that the appellants in the case at bar should have presented *in the County Court* (where Judge KING presided) their motion to disqualify Judge KING, and that such failure constituted a waiver of the claimed disqualification. That Judge KING had signed the petition was a patent fact—*i. e.,* apparent on the face of the petition—and not a latent fact that might not have been discovered with the exercise of due diligence." *Nowlin* v.

*Kreis,* 213 Ark. 1027, 214 S. W. 2d 221. Also see *Morrow* v. *Watts,* 80 Ark. 57, 95 S. W. 988; *Byler* v. *State,* 210 Ark. 790, 197 S. W. 2d 748; *Bates* v. *State,* 210 Ark. 1014, 198 S. W. 2d 850.

If appellant Carr wished to disqualify Mayor Shackleford (and we do not now decide whether the Mayor was subject to disqualification) he should have challenged his right to vote, as Alderman Cone's right was challenged, at the time of the vote, and he should have presented to the Chancery Court affirmative evidence of the timely challenge.

The decree of the Chancery Court is affirmed.