NOBLE *v.* CITY OF LITTLE ROCK.

5-377                                                         266 S. W. 2d 78

Opinion delivered March 29, 1954.

410

*John F. Park,* for appellant.

*O. D. Longstreth, Jr., Joseph Brooks* and *Dave E. Witt,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is from the Chancellor's determination that the administrative authorities of Little Rock did not act arbitrarily in rejecting an application of O. W. Noble to rezone a designated area in a manner converting it from B-Residential to I-Light Industrial. This change would have permitted the applicant to operate a commercial garage in the residential district over objections of homeowners.

Noble is the owner of Lots 7, 8, 9, and 10, Boulevard Terrace Annex No. 1 to Little Rock. The lots face West Twenty-Ninth street and Noble's home occupies parts of Lots 7 and 8. It was completed in March, 1946, and occupied that month. Three and a half years later Noble applied for authority to construct a 20 x 30-ft. frame garage on part of Lot 7 contiguous to Monroe street, and to the rear.

Noble testified that he started operating his present business in a small building April 11, 1949. Seemingly, under the permit issued October 26th of that year, he constructed a 30 x 30 garage, using concrete blocks, steel casement windows, and composition roof. He insists that for all practical purposes the building is fireproof and that inflammable commodities in appreciable quantities are not kept on the premises. He also insists that he uses modern tools designed to muffle noise, including rubber hammers, etc.

Several of the neighbors testified—and it was stipulated that others would express the same views—that the methods employed by Noble in operating the garage did not bother them, although it was conceded that he

sometimes works at night. Others thought differently. Charles C. Moore, whose home is within twenty feet of the garage, testified that when he came home during the late afternoon Noble would be operating a spray gun in a noisy manner. Then, said the witness, the worker would "open up" with his air hammer and drop his tools, "and it is a nuisance to try to rest after you get home."

It is argued inferentially that Moore bought his home knowing that the garage had been a fixture for several years, therefore he is in no position to complain of distractions consciously incurred. But the record discloses that in July, 1952, Noble was granted authority by the city council to operate the business as a non-conforming activity until January 1, 1953. At a regular meeting of the council March 9, 1953, protests signed by "a number of residents in the vicinity of the garage" were considered, with the result that the permit was revoked. It should be noted, however, that the authority expired by its own terms more than two months earlier.

When arrested for violating the zoning ordinance Noble procured a temporary injunction, the effect being to restrain officers from interfering with operation of the garage. While this suit was pending Noble applied to the city planning commission, asking that the area be rezoned. The commission's refusal was sustained by the city council July 27, 1953, and this suit followed.

The chancellor's interpretation of the effect to be given zoning ordinances was correct. The particular building—said to have cost more than $1,500—was not initially authorized. The frame structure mentioned in Noble's building application of October 26, 1949, was estimated to cost $200. While appellant may have felt morally sustained by conduct of his neighbors who gave him their automobile repair work and in saying that they were not bothered by the noise, that is not the test. The justiciable issues are whether (a) the building conformed to the zoning ordinance applicable to the area in question; and, (b) whether refusal to change existing regulations to make them harmonize with appellant's convenience or necessity was arbitrary.

The ordinance filed as an exhibit became effective March 17, 1937. Its salutary provisions were intended as much for appellant's benefit as for the benefit of anyone else. The right to reasonably regulate has long been recognized.

Our early case upholding an Act of the general assembly authorizing cities to enact zoning ordinances— *Herring* v. *Stannus,* 169 Ark. 244, 275 S. W. 321—forecloses some of the contentions made by appellant here. The ordinance as applied in the instant case is not void because, as counsel argues, police power is given precedence over constitutional property rights.

Mr. Justice FRANK G. SMITH, who wrote the Herring-Stannus opinion, quoted from *Bacon* v. *Walker,* 204 U. S. 318, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289, where Mr. Justice McKENNA said that an Idaho statute [prohibiting the herding or grazing of sheep on, or within two miles of, land or processory claims of persons other than the owners of the sheep] did not wrongly deprive sheepowners of their property without due process of law. Effect of the Idaho law was to prevent grazing, in some instances, on the public domain. The state's police power, said Judge McKENNA, is not confined to what is offensive, disorderly, or unsanitary; rather, it reaches legislative dealing with conditions existing in the state "so as to bring out of them the greatest welfare of its people."

In the Herring-Stannus case reference is made to *City of Des Moines* v. *Manhattan Oil Co.,* 184 N. W. 823, 23 A. L. R. 1322, where Mr. Justice WEAVER quotes from the opinion of Chief Justice SHAW (*Commonwealth of Massachusetts* v. *Alger,* 7 Cush. 53). In speaking for the court Judge SHAW said: "We think it is a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. . . ."

In *City of Little Rock* v. *Bentley,* 204 Ark. 727, 165 S. W. 2d 890, Judge FRANK SMITH said that when a business district has been appropriately established, the rights of owners of property adjacent thereto cannot be restricted, so as to prevent them from using it as business property. This was a reiteration of expressions in the Pfeifer case. The same principle would apply to residential property within the latitude for changes contemplated by the Little Rock ordinance and decisions construing it and delineating the legislative power.

The Tennessee Supreme Court, speaking through Mr. Justice GAILOR (*Brooks* v. *City of Memphis,* 241 S. W. 2d 432) said that the complexities of modern life have made the principle of municipal zoning necessary, hence it has been established by all courts that fixing the lines of the various districts making up the zoning plan is a legislative exercise of the police power, and not a judicial function.

As to borderline cases Mr. Justice OLIVER WENDEL HOLMES (*Louisville Gas & Electric Co.* v. *Coleman,* 277 U. S. 32, 48 S. Ct. 423, 426, 72 L. Ed. 770, 775) made this comment: "Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or a point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of the reasonable mark."

While as in the case resulting in this appeal hardships are bound to occur, we are not able to say that the municipal authorities have acted capriciously or arbitrarily in refusing to rezone the district; hence the decree must be affirmed.