DUNN *v.* DAULEY.

5-2066                                        334 S. W. 2d 679

Opinion delivered April 11, 1960.

*Robinson, Sullivan & Rosteck,* By:  *Louis W. Rosteck,* for appellant.

*Joseph C. Kemp* and *William M. Stocks,* for appellee.

PAUL WARD, Associate Justice.  This litigation was instituted by appellant, Dollie K. Dunn, against the Manager and Board of Directors of the City of Little Rock to recover retirement pay in accordance with the provisions of City ordinances. The Circuit Judge, sitting as a jury, resolved the issue against appellant and this appeal follows.

Appellant's Complaint, filed February 24, 1959, contained the following material allegations:  She was in continuous employment of the City of Little Rock from May 19, 1946 to December 31, 1958; on or about the 16th day of December of 1958 she was ordered to quit work *due to ill health* by her personal physician, and she did quit three days later due to ill health; on

or about December 20, 1958 and again on January 6, 1959 she gave notice for retirement under the provisions of City Ordinance No. 6775; on January 29, 1959 she received written notice that her claim for disability retirement had been denied by the Board of Directors of the City of Little Rock; she was not present at the hearing before the Board of Directors, had no notice of said hearing, and does not know why her claim for disability retirement was denied; and, she was receiving a salary of $200.00 per month, and, under the provisions of the ordinances above mentioned, she is entitled to receive said salary for fifteen months or a total of $3,000.00. The above Complaint was later amended to include City Ordinance No. 10783.

After the Circuit Court had denied appellees' Demurrer to the above Complaint they filed an Answer, containing a general denial.

Both sides introduced testimony to support their contentions, and the Trial Judge, sitting as a jury by agreement of the parties, found: that City Ordinances No. 6775 and No. 10783 do not ''create a pension system for the City, but are only an announcement of policy by the City. That any disability benefits created under these ordinances is a mere gratuity and creates no vested right in City employees to any benefit whatever. That the plaintiff did not sustain the burden of proof in establishing injuries or disability claimed by her or in showing that they were in any way related to or arising out of her employment''. Thereupon the Court dismissed appellant's Complaint with prejudice.

That portion of the above mentioned City ordinances which has any relevancy to the issue in this litigation is Section 8 of Ordinance No. 10783 which reads as follows:

''A. It shall be the policy of the City to continue to pay disabled employees of the non-uniformed group, retirement pay, as in the past; until such times as a better retirement plan is worked out.

B. This shall include only, classified regular employees of the non-uniformed personnel who are compelled to retire from the City's employ because of sickness or because of a permanent disability growing out of an injury incurred in line of duty.

C. The retired employee must furnish a certificate from his physician stating the reasons or cause for retirement request and submit to a complete examination by the City Health Director, who must approve the employee's request for the disability retirement.

D. If request is granted the employee will be retained on the pay roll of the department by which he was last employed prior to retirement, for a period of months equal to the number of years for which said person had been employed by the City of Little Rock, and for a fractional period of a month to correspond with that fractional period of a year which he has been employed by the City of Little Rock. Upon death of employee payments shall cease.

E. The use of the masculine pronoun in the above shall include the feminine as well.

F. Members of. the Police and Fire departments are excluded from the above provisions, because at the present time they have pension and retirement provisions created under the State statutes.''

After careful consideration we have concluded that the judgment of the trial court must be affirmed on the ground that there is substantial evidence in the record to support the Trial Judge's finding that ''the plaintiff did not sustain the burden of proof in establishing . . . disability claimed by her . . .'' In reaching this conclusion we understand that appellant is relying on *ill health* and not on a *disability* to establish her claim. We interpret the. ordinance to mean that ill health need not grow out of an injury incurred in the line of duty. Consequently, we do not pass upon the legal question whether the City Manager and the Board of Directors could arbitrarily refuse to make payments to appellant assuming the proof clearly showed she had to quit work because of her health.

*Substantial Evidence.* It is not disputed that appellant began working for the City of Little Rock on May 19, 1946 in the Women's Detention Center; that she continued to work until about December 19, 1958 or that she had high blood pressure when she began working for the City. In support of appellant's contention that she was forced to quit work because of ill health Dr. William A. Snodgrass, Jr. testified substantially as follows: I am a physician and surgeon and have been the family physician of appellant since August of 1946; I have treated her mainly for hypertension, high blood pressure due to arteriosclerosis; I had her in the hospital in April of 1958 and treated her for hypertension—she stayed in the hospital five days; on April 25, 1958 I wrote Dr. Lawson (the City Health Officer) advising him of her hypertension and recommending regular working hours; from April 25, 1958 to December 1, 1958 appellant made seven calls to my office mainly for hypertension; in November of 1958 she went into a mild congestive failure and her blood pressure dropped too rapidly; on December 16, 1958 I again wrote Dr. Lawson advising him that she had very high blood pressure and a mild congestive failure and told appellant to quit working immediately; and I saw her again on December 19, 1958 and her blood pressure was high and I ordered her to bed. I did not feel that she was able to work during the month of December and it is my opinion that she is unable to work now. On Cross-Examination the doctor stated that appellant's blood pressure was high in 1946 being 170/100 and that in his opinion she could have done housework in 1958.

Appellant testified that she began work as matron of the Women's Detention Center on May 19, 1946; that she alternated working days and nights; that after she came back to work in April of 1958 she worked until December 19, 1958 on which date she had a severe headache and the doctor ordered her to go to bed; she stated that she had dizzy spells while working but managed to keep on; that she received notice on December 18, 1958 that her job was discontinued and it was on December 19, 1958 during the lunch hour that she was forced

to go home and go to bed. She made application for retirement on December 20, 1958 by a letter to Dr. Lawson and on January 29, 1959 she received notice that the Board of Directors had denied her application. On Cross-Examination she stated that she received a letter from the City Manager on December 18, 1958 and became ill at noon the next day and had to leave work with a severe headache; that she had had such severe headaches before; she further stated that she remained in bed three days after going home on December 19th and that her doctor told her on December 16th she would have to retire. Appellant admitted to hearing rumors that her job would be abolished.

Dr. Mason Lawson, Public Health Director of the City of Little Rock, testified in substance: Appellant was under my supervision as matron of the Detention Center; I considered her work not too strenuous; I examined appellant on April 22, 1959 and she did have hypertension but I only gave her a superficial examination—a clinical examination; according to appellant's work record for the past ten years it is shown that she was off an average of 5.2 days per year which for a person of her age would indicate fairly good health; on the day I examined her I believe she could have worked. There had been some talk about closing the Detention Center and in November of 1958 it was definitely decided to do so and I believe I discussed this with appellant, however, I did not tell her in exact words that her job would be abolished. I believe that the letter to appellant stating that her job would be abolished might have caused emotional distress and the mild congestive failure, and might have caused her blood pressure to rise. On Cross-Examination, Dr. Lawson stated that he did not believe appellant's work at the Detention Center was any harder than the work done by the average housewife and that he tried to give them every consideration. Her further stated that he did not know the condition of appellant from November of 1958 to December of 1958 but that according to the records she was working during that period and never complained to him and never asked for relief. On Re-Direct Exami-

nation the doctor stated that he passed upon appellant's application for disability retirement but did not recommend that she receive disability retirement payments for the reason he thought she quit because she knew her job was going to be abolished.

Under the law and the peculiar facts of this case we must conclude that there is substantial evidence to support the findings and judgment of the trial court. Paragraph C of Section 8 of Ordinance No. 10783 sets out the things to be done by appellant before she would be entitled, under any circumstances, to retirement pay. First, she must furnish a certificate from her physician stating the reasons or cause for her retirement request, then she must submit to a complete examination by the City Health Officer, then the City Health Officer must approve her request. It is not contended here by appellant that the City Health Officer approved her request. It is also conceded, as shown by the record, that the Board of Directors denied appellant's request for retirement pay. The established rule appears to be that the courts will not override the findings of a Board unless it is first shown that the Board's action was fraudulent, arbitrary or capricious. Under the facts in this case we are unwilling to say that the Little Rock Board of Directors acted fraudulently, arbitrarily or capriciously. Such a principle has often been announced both by text writers and in judicial opinions. In Volume 3, pp. 561-562 of McQuillin, Municipal Corporations, you will find this statement:

"Unless the action of such officer or body is shown to have been fraudulent, arbitrary or capricious, usually it is held final, because the courts decline to substitute their judgment for that of the officer or body".

To the same effect we find in 40 Am. Jur., pp. 992-993 under "Pensions", Section 39, this statement:

"In an action by a city employee for a pension which had been denied to him by the pension governing body after a finding of facts by the body, which it was empowered by statute to make, that he was not entitled to the pension, it was held that in the absence of an

allegation in his petition that the action of the governing body was arbitrary and capricious, it did not state a cause of action and that the action of the governing body was final and not reviewable by the courts".

In the case of *Herring* v. *Stannus*, 169 Ark. 244, 275 S. W. 321, this Court in affirming the action of the City Council of Little Rock relative to a zoning situation made this statement: "The question is not what a member of the court might decide if the question were submitted to him as a matter of discretion, but rather is whether it can be said that the council abused its discretion, and we may not say that such was the case unless that fact clearly appears". Likewise in the case of *McKinney* v. *City of Little Rock*, 201 Ark. 618, 146 S. W. 2d 167, this Court, in upholding the action of the City Council relative to a zoning ordinance, and in approving the action of the trial court in sustaining the City Council, had this to say: "It was then tried by the chancery court, and it held that the classification was reasonable and the lower court's decision was not against the preponderance of the evidence. Moreover to set aside the decree and the finding of the Council would be substituting our judgment for that of the zoning authorities who are primarily charged with the duty and responsibility of determining the question. This we should not do unless we can say from the evidence that the action of the Council and the decision of the court are unreasonable and arbitrary".

We think the situations set forth in the above cited cases are somewhat similar to the situation in the case under consideration and that the rules above announced are applicable here. Also, the record shows that the City has no funds with which to make retirement payments in a case like this one. The administration of the entire program is in charge of the Health Officer, the City Manager and the Board of Directors. All of these have found that appellant was not entitled to retirement pay. The Circuit Judge, sitting as a jury, has approved the finding of the City authorities. We are unwilling to say that the findings of the trial court

are not supported by substantial evidence or that the City officers acted arbitrarily. Consequently, the judgment of the trial court must be, and it is hereby, affirmed.

Affirmed.

JOHNSON, J., dissents.

ROBINSON, J., not participating.