Weeden B. NICHOLS, et al., Appellants,

v.

CITY OF DALLAS, et al., Appellees.

No. 15894.

Court of Civil Appeals of Texas.

Dallas.

May 12, 1961.

Rehearing Denied June 9, 1961.

Harold B. Sanders, Dallas, for appellants.

H. P. Kucera, City Atty., N. Alex Bickley, Asst. City Atty., Saner, Jack, Sallinger

& Nichols, Strasburger, Price, Kelton, Miller & Martin and Royal H. Brin, Jr., Dallas, for appellees.

DIXON, Chief Justice.

Appellants Weeden B. Nichols and seven other property owners as plaintiffs brought this suit for permanent injunction against appellees City of Dallas and Ray Cummings, City Building Inspector, charging that Ordinance No. 8289, enacted December 7, 1959, rezoning certain property by special permit, is unconstitutional and is also illegal and invalid for other reasons.

Daniel Gevinson and Jesuit High School of Dallas, Inc., intervened as owners respectively of the equitable and legal title to the real property primarily affected.

The property, about 21 acres in extent, is City Block No. 1345 and is known also as the Jesuit High School property. Prior to the passage of Ordinance No. 8289 it was zoned under the classification R–75 for single family dwellings. However, since 1906 it has been used by the Jesuit Order in the operation either of an orphans home or of schools, both college and high school.

Ordinance No. 8289 by its terms authorizes the issuance, subject to certain conditions, of a "special permit" allowing Block 1345 to be used for "Multiple Story Apartments, Hotels, Retail Shops and Office Buildings."

Appellants allege that they are the owners of nearby properties lying within distances, exclusive of street widths, varying from 20 feet to less than 200 feet of Block 1345. They assert that they have made valuable residential improvements on their properties pursuant to deed restrictions and in reliance on the zoning of R–75 in Block 1345. They contend that the values of their respective properties would be greatly decreased if permits were issued and buildings constructed pursuant to Ordinance No. 8289.

The case was tried before the court without a jury. Judgment was rendered denying appellants an injunction. Findings of fact and conclusions of law were not requested and none were made.

Arts. 1011d, 1011e, and 1011f, V.A.C.S. provide procedures to be followed by a city in adopting and amending a zoning ordinance. Art. 1011f provides that a city shall appoint a commission to hold hearings and submit a report and recommendation to the city legislative body as to zone boundaries, districts and regulations. The Commission in this instance is the Dallas City Plan Commission; the legislative body is the Dallas City Council. The Council may not hold hearings or take action to amend existing zoning ordinance until it has received a report from the Commission.

In their first point on appeal appellants allege that the trial court erred in holding that valid hearings were held before the City Plan Commission, as required by Art. 1011f, V.A.C.S. Their chief complaint under this point is that the hearings were not held before the Commission as a whole, which is composed of fifteen members, but were held before committees composed of only five members.

The record reveals that written rules and regulations governing the actions, proceedings and deliberations of the City Plan Commission have been adopted. A copy of these rules and regulations was introduced in evidence. They provide for the appointment of fourteen standing committees including four zoning committees. Committees may be composed of three or more members but the minimum number of members to constitute a quorum of any committee holding a public hearing shall be three. The duties of a committee are to hold necessary public hearings, to review, investigate and report to the Commission on all matters submitted to the committee. After the committee report is filed with the Commission, the whole Commission makes a decision as to the recommendation to be made to the City Council.

The proceedings leading up to this litigation began as far back as March 14, 1956. In a chronology appellees in their brief enumerate 29 events which occurred between March 14, 1956, when architect George M. Dahl applied for a special permit, and May 30, 1960, when the Dallas City Council adopted a substitute plat in connection with Ordinance No. 8289. Some of these events are referred to in a stipulation of agreed facts entered into by the parties. Other events are shown by the record evidence. We shall list only a few of them.

(1) On March 14, 1956 a petition for rezoning was filed in behalf of present and prospective owners of the property. A public hearing was held April 17, 1956 before a zoning committee of the Commission. There were three members of the committee present. Appellants' attorney, who is himself an appellant, and three others of appellants appeared and spoke at this hearing. On May 16, 1956 the City Plan Commission recommended to the City Council that the change in zoning be adopted.

(2) On July 15, 1958 another hearing was held with five members of the committee present. The purpose of the hearing was to consider proposed site plans. Two of appellants including appellants' attorney, appeared in opposition. At the request of appellants' attorney the hearing was adjourned until after October 1, 1958.

(3) On March 11, 1959 a public hearing was held before a committee with five members present. The hearing was for the purpose of considering the application of Jesuit High School and Daniel Gevinson for a special permit. Three persons spoke in favor of the issuance of the permit, ten persons spoke in opposition, and one person spoke conditionally in favor. On a show of hands 30 persons were in favor and 50 persons were opposed to the issuance of the permit.

(4) On March 19, 1959 the Commission discussed the application and the proposed site plan, but deferred action until further information could be obtained.

(5) On April 9, 1959 the Commission decided to approve the application for a special permit. On April 29, 1959 the Commission made an addition to its report and amended some of the conditions on which the plan was approved.

(6) On December 7, 1959 the City Council, after a hearing before the full council, adopted Ordinance No. 8289 granting the special permit.

(7) On April 21, 1960 the Commission adopted a revised site plan and recommended additional screening before a permit should be issued. On May 9, 1960 the City Council adopted the revised site plan.

█ We are of the opinion that under the circumstances reflected in the record before us the holding of public hearings before a Zoning Committee of the City Plan Commission rather than before the whole Commission was not reversible error. Art. 1011d, V.A.C.S. provides that the legislative body of a muncipality shall provide the manner in which zoning boundaries and changes shall be determined, established and enforced. One of the stipulations of fact agreed upon by the parties here is that hearings held before Zoning Committees are governed by the Rules and Regulations of the City Plan Commission. It is undisputed that these Rules and Regulations were complied with in this case. Several hearings were held, at one of which 80 persons were present and expressed their views. Appellants did not complain at any of these hearings because the hearings were before a Zoning Committee rather than before the whole Commission. After receiving and considering the reports of the Zoning Committee, the City Plan Commission as a whole made its recommendations to the City Council.

It is to be borne in mind that the City Plan Commission acts only in an advisory

capacity. It merely recommends. It has no legislative power. Only the City Council may adopt or amend an ordinance. The record shows that Ordinance No. 8289 was passed by the City Council only after a recommendation was received from the City Plan Commission and only after a public hearing before the whole City Council.

We have found no case exactly in point with the facts presented by the record. However, in Herring v. Stannus, 169 Ark. 244, 275 S.W. 321, 322, the fact that public hearings were held before a "civic affairs committee" of the City Council rather than before the whole Council did not vitiate the later granting of a permit for a service station where the whole Council, acting upon the Committee's recommendation, granted the permit. See also Carr v. City of El·Dorado, 217 Ark. 423, 230 S.W.2d 485; Clesi v. Northwest Dallas Improvement Ass'n, Tex.Civ.App., 263 S.W.2d 820; Prince v. W. H. Cothrum & Co., Tex.Civ.App., 227 S.W.2d 863; and 101 C.J.S. Zoning § 105.

In Luse v. City of Dallas, Tex.Civ.App., 131 S.W.2d 1079, it was held that no one has a vested right in any given mode of procedure—due process of law is not being denied so long as a substantial and efficient remedy remains or is provided.

As we see it appellants' rights have not been invaded and they have suffered no harm because of the procedure complained about in their first point. Their first point is overruled.

In their second point appellants allege error on the part of the trial court in holding that appellants were accorded hearing before the City Council of the City of Dallas as required by Art. 1011d, V.A. C.S.

The record refutes appellants' claim. At least two public hearings were held. The parties have in writing stipulated as a fact that one of these hearings took place.

Paragraph No. X of the written stipulation is as follows:

"In June of 1959, the City Council caused notices to be mailed to the interested property owners announcing a public hearing to be held by the City Council on June 29, 1959. The public hearing was held as announced and after due consideration the City Council closed the hearing and took the matter under consideration. (A copy of the minutes of said meeting are attached hereto as Exhibit F)."

Appellants take the position that the above mentioned public hearing was held only for the limited purpose of considering a site plan in connection with the application for a special permit. Stipulation No. X above quoted certainly affords no basis for such a claim. Neither do the minutes of the meeting, as shown by a copy marked Exhibit F and made a part of the stipulation. We quote from the minutes:

"Hearing set for this date on Special Permit case #56–178A to determine whether a Special Permit for Retail uses * * * should be approved on the follow-described property, presently zoned Residential * * *."

Appellants are bound by the above stipulations.

The record does contain some testimony in support of appellants' contention. But there is also testimony to the contrary. This conflict in testimony can be of no comfort to appellants even if we were to ignore the above quoted stipulations, for it is well established that in a trial before the court alone without a jury when no findings of fact or conclusions of law appear in the record, all disputed issues of fact must be presumed to have been found in support of the judgment if there is evidence of probative force to support such presumed findings. Leaverton v. Sunset Motor Lines, Tex.Civ.App., 322 S.W. 2d 295; Texas Van Lines, Inc. v. Godfrey,

Tex.Civ.App., 313 S.W.2d 922. Appellants' second point on appeal is overruled.

Appellants' third point is that the court erred in holding that the granting of a special permit under the existing conditions was lawfully authorized by the Constitution of the United States, or of Texas, or by the statutes of the State, or the City Charter of the City of Dallas, or by the City's Zoning Ordinance. In support of this point appellants cite us to the holdings in McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So.2d 78; Gaudet v. Economical Super Market, Inc., 237 La. 1082, 112 So.2d 720; Johnson v. City of Huntsville, 249 Ala. 36, 29 So.2d 342; Mathis v. Hannan, Ky., 306 S.W.2d 278; and Huebner v. Philadelphia Savings Fund Society, 127 Pa.Super. 28, 192 A. 139.

In our opinion the above cited cases are not in point and should not control our holding here. For example, in McCauley v. Albert E. Briede & Son, supra, though a public hearing was actually had before the City Council, the special permit ordinance did not require a public hearing. Moreover, the ordinance did not create a new or change an established classification or zone district; it merely authorized the City Council to issue a permit to a landowner to establish a mortuary in a B-Residential District. The action of the Council constituted and administratively granted exception to the zoning law, not an amendment of the law. The same is true of Gaudet v. Economical Super Market, supra.

In Johnson v. City of Huntsville, supra, the City did not pass a comprehensive zoning ordinance, but merely attempted spot zoning, leaving part of the City free and unzoned.

In Mathis et al. v. Hannan, supra, the court held that the ordinance in question was an arbitrary spot zoning of the Hannan property, not related to the health, safety, morals of the City, hence was not a proper exercise of the police power.

Huebner v. Philadelphia Savings Fund Society, supra, held that a single lot with building thereon is not a proper area to be classified as a zoning district in itself, and an act of City Council to permit a funeral parlor on the lot was unreasonable, discriminatory and violated the zoning law.

In contrast to the above cited authorities, Art. 165-22 of Ordinance No. 5238, the City of Dallas Comprehensive Zoning Ordinance, specifically provides for the granting of special permits accompanied by a site plan for private business projects and shopping centers consisting of not less than three acres after recommendation from the City Plan Commission, and after proper notice to all parties and a public hearing before the City Council. The Ordinance also expressly states that such special permit shall be considered an amendment to the zoning ordinance, and shall contain such requirements as are necessary to protect adjoining property owners.

In this particular instance the area involved consists of 21 acres which has for many years been used for school purposes.

It will be observed that the procedure above prescribed, Dallas City Ordinance No. 5238 to be followed for the issuance of a special permit is the very procedure necessary for amending the zoning law. Perhaps the name "special permit" was not well chosen, for the legal effect of the action so taken is unquestionably to amend the zoning ordinance. Though the presumption is rebuttable, it is presumed that an ordinance amending a comprehensive zoning ordinance is valid. Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704; McNutt Oil & Refining Co. v. Brooks, Tex.Civ.App., 244 S.W.2d 872. The "special permit" method of amending a comprehensive zoning ordinance has been recognized in this State. Prince v. W. H. Cothrum & Co., Tex.Civ.App., 227 S.W.2d 863; Clesi v. Northwest Dallas Improvement Ass'n, Tex.Civ.App., 263 S.W.2d 820.

The adopting of a zoning ordinance, or of an ordinance amending an existing zoning ordinance is an exercise of the police power. In weighing the validity of such an exercise of power one of the tests is whether reasonable minds might differ concerning the advisability or necessity of adopting or amending a zoning ordinance. If reasonable men might so differ, an amending zoning ordinance will ordinarily stand as a valid exercise of the police power. Ray v. City of Dallas, Tex.Civ. App., 343 S.W.2d 930; Long v. City of Corpus Christi, Tex.Civ.App., 315 S.W.2d 24. This rule of law becomes pertinent in this case because of paragraph XII of the stipulations of fact:

"In the event competent real estate men were asked their opinion as to the highest use of the property herein in controversy, there would be a difference of opinion among such experts and they would also differ as to the affect of the rezoning of the subject property upon the property of the plaintiffs. Subject to legal objections, testimony on such matters may also be offered by any party at the time of the trial."

In the light of the above stipulation of fact certainly it cannot correctly be said that the passage of Ordinance No. 8289 was an arbitrary attempt to exercise the police power. Appellants' third point is overruled.

In their fourth and fifth points appellants assert that Ordinance No. 8289 unlawfully delegates (4) legislative and judicial authority to an administrative official, the City Building Inspector to determine the "character" of uses of property and nature of improvements, to determine what constitutes a "high ratio" and what constitutes adequate zoning; and (5) legislative authority to the Zoning Commission and other non-legislative bodies.

The particular portions of Ordinance No. 8289 which are here attacked are Sections 4, 8, 9 and 10 from which we quote:

"(4) That apartment development shall be permitted facing Turtle Creek Boulevard, and such apartment structures shall be solely for residential occupancy and of the highest standard in recognition of the character of Turtle Creek Boulevard and the conformity therewith."

"(8) That no access to the proposed development shall be permitted from Irving Avenue."

"(9) That adequate screening shall be provided to protect the adjacent residential properties facing on Irving Avenue. * * *."

"(10) That off-street parking shall be provided at a high ratio for all proposed uses in order to minimize and reduce any congestion resulting from the proposed change; and that 85% of the parking shall be provided underground. No additional charge shall be made to occupants and their guests for parking."

We also quote from sub-paragraph 23 of Art. 165–22 of Ordinance No. 5238, the comprehensive zoning ordinance of the City:

"In granting such permit, the City Council may impose conditions which shall be complied with by the grantee before certificate of occupancy may be issued by the Building Inspector for the use of the buildings on such property pursuant to said special permit; and such conditions shall not be construed as conditions precedent to the granting of the special permit or the change in zoning of such property, but shall be construed as conditions precedent to the granting of a certificate of occupancy."

Do the quoted portions of Ordinances Nos. 5238 and 8289 constitute an unlawful delegation of legislative authority to administrative officers and bodies? In our opinion the answer is no.

■ The fact that under a delegation of authority to an administrative officer there is an area for the exercise of his discretion does not render the delegation of authority unlawful if the standards formulated for his guidance and the limits of his discretion, though general, are capable of reasonable application. Moody v. City of University Park, Tex.Civ.App., 278 S.W.2d 912; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294; Maxwell v. Klaess, 274 App.Div. 943, 85 N.Y.S.2d 330; Tighe v. Osborne, 150 Md. 452, 133 A. 465, 46 A.L.R. 80; State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 69 N.W.2d 217. An administrative officer before issuing a building permit, or a, liquor license, or a marriage license, or any other permit or license, must necessarily study and analyze applications presented to him in order to determine whether an application meets the standards laid down in a statute or ordinance as a prerequisite for the issuance of a permit or license.

■ The restrictions governing the issuance of a certificate of occupancy were obviously placed in the Ordinance for the benefit and protection of nearby property owners such as appellants. In passing on an application for a certificate to determine whether a proposed occupancy complies with the restrictions set out in the ordinance, it will not be presumed that the Building Inspector will act in an arbitrary manner. But if he should do so, aggrieved parties have an adequate remedy. Under Art. 1011g, V.A.C.S. they may appeal to the Board of Adjustment from decisions of the Building Inspector. If that recourse fails, resort may later be had to the courts for relief. Moreover, Ordinance 8289 itself provides that if any section, paragraph, sub-section, clause, phrase or provisions of the ordinance shall be judged invalid the validity of the remaining parts shall not be affected. Appellants' fourth and fifth points are overruled.

In their sixth and last point appellants attack Ordinance No. 8289 because it does not require that applications for uses sought to be authorized by special permit be submitted to the Board of Adjustment of the City of Dallas.

■ As we have pointed out Ordinance 8289 had the legal effect of amending the comprehensive zoning ordinance of the City of Dallas. Only the legislative body of the municipality, the City Council, has the legislative authority to amend the ordinance. The duties of a Board of Adjustment, as set out in Art. 1011g, V.A.C.S. have nothing to do with the amending of an ordinance. Gartner v. Board of Adjustment of City of San Antonio, Tex.Civ.App., 324 S.W.2d 454; Board of Adjustment v. Stovall, Tex.Civ.App., 218 S.W.2d 286; Texas Consolidated Theatres v. Pittillo, Tex.Civ.App., 204 S.W.2d 396. The Board of Adjustment certainly may not give anyone permission to establish a business or apartment district in an area for single family dwellings. Only an amendment of the zoning ordinance by the City Council, after the Council has received a report from the Plan Commission, may bring about such a change. Appellants' sixth point is overruled.

The judgment of the trial court is affirmed.