724 P.2d 1223

**STATE of Arizona, Appellee,**

v.

**Alan James THOMPSON, Appellant.**

**No. 1 CA–CR 8746.**

Court of Appeals of Arizona,
Division 1, Department D.

March 4, 1986.

Reconsideration Denied April 23, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GRANT, Presiding Judge.

Appellant Alan James Thompson (defendant) was charged by indictment with one count of attempted first degree murder and two counts of child abuse of his girl friend's young son. The state filed allegations of dangerousness, and of prior convictions pursuant to *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980).

Defendant pled guilty to attempted first degree murder and one count of child abuse, both dangerous felonies. One count of child abuse was dismissed, and the state impliedly dropped the allegation of *Hannah* prior convictions. The defendant entered an *Alford* plea, with a factual basis statement attached to the plea and further facts read to the court at the change of plea hearing. The trial judge, the Honorable Jeffrey S. Cates, found the plea to be knowing, intelligent, and voluntary.

After defendant's plea, his co-defendant Catherine Inman went to trial on five counts of child abuse. Judge Cates, who accepted defendant's plea, presided at his co-defendant's trial. Defendant was not present, nor was his attorney present, at that trial. Inman was found guilty of one count of child abuse, a class 4 felony, one count of child abuse, a class 3 felony, and one count of child abuse, a repetitive class 2 felony.[1]

After that trial, sentencing proceedings for the defendant were scheduled before the same judge. At one proceeding, the court suggested to defendant that if he wished to move for a change of judge, he

---

1. The court of appeals may take judicial notice of matters of record therein. *Hackin v. First National Bank*, 5 Ariz.App. 379, 427 P.2d 360 (1967). *State v. Inman*, 1 CA–CR 8765, is an appeal pending before this court.

should do so promptly so as not to delay sentencing. Defendant then filed a motion, pursuant to rule 10.1, Arizona Rules of Criminal Procedure, for a change of judge for cause. The presiding criminal judge of the superior court, the Honorable John H. Seidel, presided over the hearing, at which Judge Cates testified. At the end of the hearing, Judge Seidel concluded that no evidence showed any interest or prejudice by Judge Cates and that the fact that Judge Cates presided at Inman's trial did not require his recusal from sentencing defendant.

Before the sentencing hearing, an extensive presentence report was filed. At the presentence hearing, the prosecution introduced and played a videotape showing the present state and activities of the victim; the only witness was a police officer who participated in making the film. The defense presented no evidence in mitigation.

The court specifically found aggravating factors. Defendant was sentenced to 21 years for attempted first degree murder and 21 years for child abuse, to be served *consecutively.* Defendant received 298 days for presentence incarceration credit.

The only argument raised in this appeal is that the trial court erred by denying the motion for a change of judge. Defendant argues that when the trial judge heard the severed trial of his co-defendant Inman before he sentenced defendant, the Inman trial became an aggravation of sentence hearing during which defendant had no chance to cross-examine witnesses or to contest accusations made against him. Defendant urges that the Inman trial was an *ex parte* communication in violation of Canon 3(A)(4) [2] of the Code of Judicial Conduct, rule 81 (formerly rule 45), Supreme Court Rules.

The state argues that there is no *per se* disqualification where the sentencing judge has presided over the trial of a co-defendant. Rather, the state argues that rule 10.1(a), Arizona Rules of Criminal Procedure, provides the only applicable grounds:

In any criminal case prior to the commencement of a hearing or trial, the state or any defendant shall be entitled to a change of judge if a fair and impartial hearing cannot be had by reason of the interest or prejudice of the assigned judge.

The state claims that the defendant did not establish any grounds for disqualification.

We note rule 17.4(g), Arizona Rules of Criminal Procedure, provides that if a judge rejects a plea agreement and allows a plea to be withdrawn, the judge shall, upon request of the defendant, disqualify himself from the case. The rule is based on the fact that the judge would then have read the presentence report prior to a determination of guilt. *See Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969) (judge must not review presentence investigation report until after defendant's guilty plea or conviction; pertinent rule now amended to permit judge's review of report at any time with defendant's consent). In the case before us the plea was accepted before the co-defendant's trial so the sentencing judge had not heard any evidence from an *ex parte* or collateral source prior to the plea. The plea was not subsequently withdrawn so this rule does not come into play.

■ The first question is whether there is any *per se* disqualification in this situation. There are no Arizona statutes or rules of court which so provide. We have found no Arizona opinions on point. However, the cases from other jurisdictions hold that the trial judge presiding over the separate trial of a co-defendant does not automatically require the trial judge to recuse himself when considering the case of the defendant. *See United States v. Partin,* 601 F.2d 1000 (9th Cir.1979) *cert. denied,* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980); *In re Richard W.,* 155

---

**2.** Canon 3(A)(4) provides in relevant part:
A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* applications concerning a pending or impending proceeding.

Cal.Rptr. 11, 91 Cal.App.3d 960 (1979); *Jones v. State*, 416 N.E.2d 880 (Ind.App. 1981); *Manning v. Engelkes*, 281 N.W.2d 7 (Iowa 1979); *Carey v. State*, 43 Md.App. 246, 405 A.2d 293 (1979), *cert. denied*, 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed. 244 (1980).

In both *Manning* and *Jones*, the appellate courts considered the effect of Canon 3(C)(1)(a), which provides:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...

The Canon has been adopted with the same language in the judicial codes of Iowa, Indiana, and Arizona. Although defendant has argued the applicability of Canon 3(A)(4), we find that Canon 3(C)(1)(a) is the applicable provision of the Code of Judicial Conduct in this situation. Canon 3(A) is under the heading "Adjudicative Responsibilities," while Canon (3)(C) deals expressly with disqualification.

In *Jones*, the trial judge had found Jones's co-defendant guilty at a bench trial. Jones was later tried without a jury before the same judge and was convicted. In post-conviction proceedings, Jones argued that the trial judge should have disqualified himself under Canon 3(C)(1)(a), Indiana Code of Judicial Conduct. The appellate court held the judge did not have to disqualify himself because "[t]hat personal knowledge which requires recusal is knowledge acquired from extra judicial sources, not what the judge learned from his participation in the case." *Id.*, 416 N.E.2d at 881.

Similarly, in *Manning*, the appellate court noted:

In *State v. Smith*, 242 N.W.2d 320 (Iowa 1976), we reviewed Canon 3C and concluded that "evidence presented in the trial of a prior cause, or definite views on the law, create no personal bias since they do not stem from an extra judicial source." *Id.* at 323–24.

Since evidence presented in the trial of the previous Jones [co-defendant] case cannot give rise to a "personal bias" which necessitates recusal, [the] trial court's role in the prosecution of plaintiff's co-defendant is not sufficient ground to require recusal.

*Manning*, 281 N.W.2d at 10. Therefore, the trial judge could properly rule on the prosecution's motion to dismiss the defendant's charges after presiding at the co-defendant's trial.

We concur with the reasoning of *Jones* and *Manning*. Although involving different facts, this court stated the same general rule in *Smith v. Smith*, 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App.1977), "It is generally conceded that the bias and prejudice necessary to disqualify a judge must arise from an extra-judicial source and not from what the judge has done in his participation in the case." We agree that the rule that a trial judge must be impartial, "does not mean that a judge must recuse himself from a criminal case merely because he has heard unfavorable remarks about the defendant in the course of prior litigation." *Commonwealth v. Campbell*, 5 Mass.App.Ct. 571, 587, 366 N.E.2d 44, 57 (1977) (alleged bias based on judge presiding over earlier trial of same defendant). *See also State v. Munoz*, 110 Ariz. 419, 520 P.2d 291 (1974).

The cases of *State v. Valencia*, 124 Ariz. 139, 602 P.2d 807 (1979) and *State v. Leslie*, 136 Ariz. 463, 666 P.2d 1072 (1983), cited by defendant, are readily distinguishable. Both were cases in which the trial court spoke *ex parte* to relatives of murder victims prior to sentencing. The information received there was not obtained in a prior judicial proceeding.

■ Having concluded there is no *per se* rule of disqualification, the question then becomes whether the defendant at the rule 10.1 hearing in fact established an interest or prejudice on the part of the trial judge. The superior court's ruling on a motion for change of judge based on prejudice will not

be overturned on appeal absent an affirmative showing of abuse of discretion. *State v. Perkins,* 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984). For the purposes of the motion, there is a presumption of impartiality by the trial court and the burden is on the party seeking recusal to prove bias or prejudice by a preponderance of the evidence. *Id.* The party seeking recusal must show how any proclivity on the part of the trial court prejudiced him. *Id.*

■ There is no evidence of prejudice in this record. Judge Cates stated at the rule 10.1 hearing:

Q. [By Steve Collins, defense counsel] After hearing the trial of Catherine Inman, did you have feelings either way in regard to the sentencing of Alan Thompson at that point at the end of the trial?

A. [By Judge Cates] Before I read the presentence report?

Q. Correct.

A. I had an open mind. I was not favorably impressed with Alan Thompson just because he had pled [guilty] and I had assumed that he had committed the strangulation.

\* \* \* \* \* \*

A. I had an open mind until after I had an opportunity to read the presentence report.

He testified that the only aggravating factor he was aware of prior to reading the presentence report was the nature of the crime. Of course, the court was clearly aware of the nature of the crime at the time that defendant pled guilty from the written factual basis attached to the plea agreement, and from the oral recitation to the court which clearly informed the court of the nature of defendant's crime, even before the Inman trial had begun.

Defendant has not pointed to any particular evidence or statements in the Inman trial which were not contained in the factual basis for defendant's guilty plea, or in the presentence report, despite the fact that the court provided defense counsel with a transcript of the Inman trial prior to the presentence hearing. If the judge had any misconceptions about defendant arising from the Inman trial, defendant could have refuted them at the presentence hearing, but he made no such effort.

The presentence report contained statements from people who had testified at the Inman trial. Defendant does not contend that there is any difference between the testimony of the state's witnesses at the Inman trial and their statements as reported in the presentence report. In *Munoz,* the court found no prejudice to the defendant, where the "sentencing judge was already in possession of accurate information concerning the defendant prior to receiving the same information which a presentence report would certainly contain." *Id.,* 110 Ariz. at 421, 520 P.2d at 293.

Defendant argues that his denial of the crime in his statement in the presentence report was contrary to the evidence produced at the Inman trial. However, in making the *Alford* plea, defendant admitted the state could prove his guilt. Moreover, at the change of plea proceeding, the state read into the record defendant's version of the facts as related to a Phoenix police detective. Thus, both from the factual basis for the guilty plea and from the presentence report the court was aware that defendant's version of the facts was different from that which he conceded the state could prove at trial.

As evidence that the Inman trial was in effect a substitute for an aggravation hearing and to establish the trial judge's prejudice, the defendant relies on estimates by the prosecutor of the time required for the sentencing hearing. After defendant's guilty plea was entered at the October 25, 1984 change of plea hearing, the court asked how long the presentence hearing would take. The prosecutor replied, "Days." On January 6, 1985 during another discussion to schedule sentencing, the prosecutor stated the matter would take two or three hours. Jury selection in the Inman trial began November 5, 1984 and the jury reached its verdicts on November

27, 1984. Defendant argues that this change in the prosecutor's time estimate means "the prosecutor realized that there was no need to further influence or inform Judge Cates. That function had been performed during the co-defendant's trial."

The argument ignores two critical factors. First was the remainder of the October 25, 1984 discussion on the estimated length of the sentencing hearing. Judge Cates asked whether the prosecution believed the hearing would take days. The prosecutor replied, "I really do, but the thing is, I'd like to see the [presentence investigation] report before I go blocking off any of the court's time to put on evidence." The prosecutor recognized the need for a presentence report, and that the report would influence how much additional evidence he would need to present.

The presentence report is the second factor. The report, filed December 18, 1984, was 31 pages. A supplemental report was filed prior to the February 8, 1985 sentencing hearing. The probation officer who prepared the report spoke with nearly all the witnesses from the Inman trial. He also interviewed other persons who did not appear at the trial. The thorough investigation and report reduced the amount of evidence the prosecutor required for his sentencing presentation. The sequence of events complained of by defendant fails to show prejudice by the trial judge.

In conclusion, Judge Seidel did not err either in concluding that there was no automatic disqualification in this instance, or that there was no showing of bias or prejudice which would require the disqualification of Judge Cates from sentencing the defendant.

We have reviewed the record for fundamental error, pursuant to A.R.S. § 13–4035, and have found none. For the above reasons, the conviction and sentence are affirmed.

BROOKS and FROEB, JJ., concur.