Brent HOLLOWAY and Ricky DELCAMP v. STATE
of Arkansas

CR 87-82                                    738 S.W.2d 796

Supreme Court of Arkansas
Opinion delivered November 2, 1987
[Supplemental Opinion on Denial of Rehearing
December 4, 1987.*]

*Purtle, J., would grant rehearing.

*Joel W. Price*, for appellant Brent Holloway.

*Witt Law Firm, P.C.*, by: *R. Kevin Barham*, for appellant Ricky Delcamp.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellants, Brent Holloway and Ricky Delcamp, were tried together on charges arising from a police drug raid on a house where both lived. They were allegedly found to be in possession of drugs and drug paraphernalia. Both were found guilty. Holloway was sentenced to fifteen years imprisonment for possession of cocaine, and Delcamp was sentenced to thirty years imprisonment for possession of cocaine with intent to deliver. Both received seven year sentences and were fined $8,000 for possession of drug paraphernalia. Each appellant has filed a brief, and each raises some points which are the same as those raised by the other. Each also raises a separate point not raised by the other. We will discuss the points the appellants have raised in common and then discuss the matters raised individually by them. We find there was no prejudicial error, and thus we affirm.

About a week before the arrests in this case, the police had arrested for drug possession a person who became a confidential informant. The informant told the police that Delcamp was trafficking in drugs, and that he, the informant, had purchased drugs from Delcamp. The testimony showed that Delcamp's residence had been the subject of complaints by neighbors with respect to the heavy traffic in and out, especially at night. The informant was "wired" with a body mike and sent by the police to

make a "controlled buy" from Delcamp at the latter's residence, using marked currency.

After being in the residence, the informant told the police he had seen quantities of cocaine in a box on the kitchen table and on a mirror on the kitchen table as well as drug paraphernalia throughout the house. He made the purchase as he had been instructed.

Based on the information given them by the informant, a warrant was sought by the police to search Delcamp's apartment. Circuit Judge Don Langston issued the warrant at 9:00 p.m. on March 7, 1986. The search began at 9:20 p.m. that evening. When the police entered the apartment, Delcamp was in the dining room where, on the dining room table, a bag filled with packets of what was later identified as cocaine was found. Four of the marked $20 bills were found on Delcamp's person. Delcamp's bedroom, identified by the personal items found there, was searched, and under a chair officers found a box containing drug paraphernalia along with more cocaine.

A bedroom identified as Holloway's was also searched, and a number of items of drug paraphernalia were found there along with a white powder identified by the testimony of a state chemist as cocaine residue. Holloway also admitted having used cocaine at Delcamp's residence earlier in the evening.

## 1. Disqualification

The most troublesome issue in this case is whether the circuit judge who tried this case should have disqualified when, in the process of a suppression hearing to determine the validity of the search warrant, it became apparent he would have to rule on the propriety of the warrant he had earlier approved. Canon 3. C. of the Code of Judicial Conduct, which was adopted by this court by per curiam order found at 255 Ark. 1075, 493 S.W.2d 422 (1973), provides:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary

facts concerning the proceeding; . . . .

In *Adams* v. *State*, 269 Ark. 548, 601 S.W.2d 881 (1980), we cited the Canon as a basis for holding that a judge should have disqualified in a criminal trial in which his nephew was the prosecutor. In *Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 936 (1984), we were faced with a situation like the one before us now. We cited *Adams* v. *State, supra*, and said:

> This Canon applies even though no request to disqualify and no objection to the failure to disqualify is necessary. We think the rule applied in *Adams* is equally applicable to the present case. The trial judge was required to rule upon the validity of a search warrant which he had issued. We think the trial judge should have recused. . . .[282 Ark. at 321, 668 S.W.2d at 940]

The *Bliss* case was retried and the convictions again appealed to this court. In our second opinion in the case, we said that in reversing the first judgment we ". . . held that the trial judge had erred in not requiring the prosecutor to file a bill of particulars and in not recusing with respect to a motion to suppress a search conducted on the authority of a warrant issued by the judge himself." *Bliss* v. *State*, 288 Ark. 546, 548, 708 S.W.2d 74, 75 (1986). Upon closer reexamination of the first *Bliss* opinion, however, we conclude that our reversal was based solely upon the failure to file a bill of particulars, and, although we said the trial judge should have recused from the suppression hearing, we did not say, or hold, that his failure to do so was reversible error.

We now conclude that our statement in the first *Bliss* opinion went too far with respect to recusal. Canon 3. C. (1) (a) does not require recusal when the judge has obtained knowledge of the facts of the case before him from previous judicial proceedings in that very case. *State* v. *Thompson*, 150 Ariz. 554, 724 P.2d 1223 (1986); *Jones* v. *State*, 416 N.E.2d 880 (Ind. Ct. App. 1981); *Manning* v. *Engelkes*, 281 N.W.2d 7 (Iowa 1979); *Reading* v. *Ball*, 291 S.C. 492, 354 S.E.2d 397 (Ct. App. 1987). *See also In re Kean*, 520 A.2d 1271 (R. I. 1987).

At least one court has said specifically, with reference to the canon, that participation of a judge in a probable cause determi-

nation does not necessarily disqualify him from trying the case on the merits. *See State ex rel. French* v. *Hendricks Superior Court*, 252 Ind. 213, 247 N.E.2d 519 (1969). *See also Jones* v. *State, supra; Stiles* v. *State*, 156 Ind. App. 675, 298 N.E.2d 466 (1973).

While we have no Arkansas case, other than the first *Bliss* opinion, interpreting the canon in this respect, we have earlier cases indicating that a judge is not disqualified as the result of participation as a judge in an earlier phase of the litigation. *See Bates* v. *State*, 210 Ark. 1014, 198 S.W.2d 850 (1947), in which the court said, in response to an allegation that the judge who tried the defendant for murder had participated in questioning him before the trial, " . . . [t]he presence of the trial judge could have been in the line of his judicial duties, that is, these questions and answers could have been in a habeas corpus proceeding to consider bail, or they could have been in a hearing to see if the defendant should be committed to the State Hospital to determine his sanity." 210 Ark. at 1024, 198 S.W.2d at 855. It was held that Bates's proof that the trial judge was involved without showing that the involvement was "improper," was insufficient for reversal. *See also Bledsoe* v. *State*, 130 Ark. 122, 197 S.W. 17 (1917), in which we held that Ark. Const. art. 7, § 20, did not require disqualification of a judge who had previously participated in a grand jury hearing related to the trial. We held the judge was not disqualified because the constitutional provision disqualifying a judge who has participated as an attorney or counsel in a case did not apply to bar a judge who had participated after he assumed his official duties.

We agree with the decisions of other jurisdictions holding that Canon 3. C. (1) (a) of the Code of Judicial Conduct is not meant to preclude participation of a judge who has obtained knowledge of a case through previous judicial participation in it.

## 2. The affidavit

The appellants argue that the affidavit upon which the search warrant was based misled the judge by not mentioning that the informant was a person who had been convicted of a previous drug offense and was under charges at the time he cooperated in this case. They rely on Ark. R. Crim. P. 13.1 and its provision that if the affidavit is based on hearsay the affiant shall

"set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained."

■ In *United States* v. *Leon*, 468 U.S. 897 (1984), the Supreme Court said that if the magistrate issuing a warrant is misled by information in the affidavit and the affiant knew it was false or there was a reckless disregard for the truth, the evidence may be suppressed despite the good faith reliance of the police upon the warrant. The appellants have not demonstrated that any false statement was made by the police to Judge Langston when he issued the warrant. The warrant noted that the informant made statements "with full knowledge of his penal interest." That was surely sufficient to alert the judge that the informant had something to lose or to gain with respect to his "penal interest" by cooperating with the police. Moreover, this is not a case in which the affidavit was based solely upon the hearsay statements of the informant. The police had ascertained there were probably drugs and paraphernalia in Delcamp's residence, and that drug selling was occurring there, through their participation in setting up the "controlled buy." They knew that the informant, on the day the search was conducted, had entered that residence with no cocaine on his person and with $100 in marked bills, and that he had come out of the house in possession of cocaine and without the money. We have no doubt that the requirement of *Illinois* v. *Gates*, 462 U.S. 213 (1983), that the magistrate make a practical, common sense determination whether there is probable cause for a search warrant based upon the totality of the circumstances, was met in this case. *See Thompson* v. *State*, 280 Ark. 265, 658 S.W.2d 350 (1983).

### 3. Nighttime search

The warrant form used by the judge contained alternative wordings, in some instances with the correct ones to be checked. In other instances the incorrect phrases were to be "lined out." The judge checked the space indicating "the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy." However, he left unmarked these "line out" alternatives: "YOU ARE HEREBY COMMANDED to search the place . . . (at any time in the day or night) (between the hours of

6:00 A.M. and 8:00 P.M.) . . . ." The appellants contend the warrant was thus facially deficient as the basis for the search and that there was no necessity for a nighttime search even if the warrant had been sufficient to command it. Arkansas R. Crim. P. 13.2 (c) provides that a search must be conducted between the hours of 6:00 a.m. and 8:00 p.m. unless one of three special circumstances permitting a nighttime search can be shown.

██ The abstracts submitted by the appellants do not show that either of these matters was raised in the trial. The argument pointing out the allegation of an insufficient basis for a nighttime search was apparently raised for the first time in a post-trial motion for a new trial, and the appellants do not suggest the trial judge abused his discretion by refusing to grant a new trial. The court was given no timely opportunity to rule on an objection to the nighttime search, and no opportunity at all to rule on the question of the facial defect in the warrant. The failure to make an argument which might have been made at trial waives the argument for purposes of appeal. *Campbell* v. *State*, 281 Ark. 13, 660 S.W.2d 926 (1983); *Spears* v. *State*, 280 Ark. 577, 660 S.W.2d 913 (1983). We have held specifically that if counsel fails to request a ruling on the propriety of a nighttime search the objection is waived on appeal. *Gatlin* v. *State*, 262 Ark. 485, 559 S.W.2d 12 (1977).

### 4. Instructions

Arkansas Model Criminal Instructions 3304 and 3307 deal with the distinction between actual and constructive possession. Each contains the following:

> [There are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession exists when a person, although not in actual possession of a thing, has the right to control it and intends to do so, either directly or through another person or persons. (If two or more persons share actual or constructive possession of a thing, either [or both] may be found to be in possession.)]

The appellants argue that the words, "of that thing" should have been added to the instruction, as they requested. They contend that without those additional words the jury could have found

them guilty if it determined they shared possession of anything, as opposed to sharing possession of the prohibited items. We disagree with the appellants' argument, as we are convinced that no jury would convict an accused charged with possession of prohibited drugs if it found only that he shared possession of an item, such as a piece of furniture, which was not contraband.

■ The appellants also wanted an additional sentence with the instruction, as follows: "However, where possession is shown by joint occupancy only, additional factors connecting the defendant to the object must be proven (established), or (shown)," citing *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 251 (1982), and *Sanchez* v. *State*, 288 Ark. 413, 707 S.W.2d 310 (1986). The trial court in *Osborne* v. *State, supra*, rejected an almost identical proposed addition to the instruction on possession because it was incomplete. We affirmed his action as we do in the case before us now. To have given such an instruction would have left the jury wondering what additional things would have to be proved. Again, we hold the AMCI wording describing constructive possession to be sufficient.

### 5. Failure to sever

The appellants asked the trial court to sever their cases, and their motion was refused. They contend there were three reasons the severance should have been granted. First, they claim to have had antagonistic defenses; second, they contend the state introduced evidence against them "en masse," and that thus the jurors could have been indiscriminate in its application, and third, Holloway argues that the evidence of prior sales by Delcamp was prejudicial to his case.

There is nothing of record to support the allegation that the defenses of the appellants were antagonistic. Neither attempted to claim innocence at the expense of the other. Nor are we persuaded that either suffered by the introduction of evidence without sufficient additional evidence to show why it was relevant to one or the other. For example, when the evidence with respect to the drug paraphernalia was found, its location at the time of seizure was noted. Nor are we persuaded that Holloway was necessarily prejudiced in the eyes of the jury as the result of the evidence of prior sales by Delcamp. Holloway was convicted only

of possession.

■ We will not disturb the decision of a trial judge refusing to sever unless we find there has been an abuse of discretion. *McDaniel* v. *State*, 278 Ark. 631, 648 S.W.2d 57 (1983). We find no such abuse in this case.

### 6. Sufficiency of the evidence

Appellant Holloway contends there was insufficient evidence to sustain his conviction. The essence of his argument is that there was nothing in evidence to connect him with the sales of cocaine alleged against Delcamp. Again, it is enough to say that Holloway was not convicted of possession with intent to deliver, but of simple possession. Thus it does not matter that nothing connected him with the sales, as the evidence was clearly sufficient to show him to have been in possession of cocaine.

■ The paraphernalia found in Holloway's bedroom, the cocaine residue found there, and Holloway's admission he had used cocaine earlier in the evening while in Delcamp's residence were sufficient to take the evidence above mere suspicion or conjecture and to compel a conclusion one way or the other. *Williams* v. *State*, 289 Ark. 443, 711 S.W.2d 825 (1986).

### 7. Prior drug sales

Appellant Delcamp argues it was error to have admitted the testimony of Karen Knox to the effect that he had, some nine to ten months earlier, told her if she knew anyone else needing cocaine she should refer that person to him.

■ Arkansas Rules of Evidence 404(b) permits evidence of prior bad acts for the purpose of proving intent. Delcamp was charged with possession with intent to deliver. The evidence was thus admissible for that purpose. Nor are we concerned with the fact that the evidence was of an indication of the intent to sell drugs nine or ten months before the events of this case. In *Lincoln* v. *State*, 285 Ark. 107, 685 S.W.2d 166 (1985), we held that proof of prior drug sales which occurred more than a year earlier could be admitted to show possession with the intent to deliver.

The convictions are affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. There was no need for the majority to establish a new rule, not supported by case law, that a judge need not recuse when he is asked to determine the validity of a search warrant he had previously authorized before the case was filed by the state. The rules stated in *Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 976 (1984), and *Adams* v. *State*, 269 Ark. 548, 601 S.W.2d 881 (1980) are correct decisions and should have been followed in this case. When the sufficiency of the evidence for probable cause for the search warrant is contested, the issuing magistrate should not review his own prior action. Even though he was most sincere and honest in upholding his prior action, such a ruling would still give the appearance of unfairness.

I agree that the first *Bliss* decision was not reversed solely on the issue of the judge subsequently ruling on the validity of a search warrant issued by him. We had other grounds for reversal and therefore did not have to place much emphasis on the search warrant issue. But the reasoning of the majority for overruling *Bliss* is unconvincing.

The cases from other jurisdictions which are relied upon by the majority are inapposite. The first case is *State* v. *Thompson*, 724 P.2d 1223 (Ariz. App. 1986). I quote from page 1225 of the above case: "The only argument raised in this appeal is that the trial court erred by denying the motion for a change of judge" because the trial judge had presided over the trial of a co-defendant. It is essential to note that a different judge heard this motion and denied it. Thus it would seem to me that the Arizona case supports the dissent in this case.

The majority cites *State ex rel. French* v. *Hendricks Superior Court*, 247 N.E. 2d 519 (Ind. 1969) and I must admit it addresses the issue of probable cause when it states: "Further, the mere fact that a judge has ruled upon a showing of probable cause does not necessarily disqualify that judge from trying that case on its merits." However, the *French* case arose out of a situation where no probable cause hearing had been held before an arrest warrant had been issued. Therefore, it is very obvious that the judge hearing the probable cause issue was not the issuing judge because no judge issued the warrant. Because the affidavit of

probable cause for arrest was not filed until thirty days after French had been arrested, the Indiana appellate court held the warrant to be null and void. In any event, the judge ruling on the validity of the warrant was not ruling on the reliability of his previous action.

*Reading* v. *Ball*, 354 S.E.2d 397 (S.C. App. 1987), concerned a divorce proceeding in which a woman tried to get the presiding judge to recuse because she alleged that he was biased against her. Certainly *Reading* stands for the proposition that a judge need not recuse from considering its prior action in the same case, but it in no manner relates to a judge ruling upon his own prior action in determining probable cause for a search warrant.

The only other foreign case relied upon by the majority is *Stiles* v. *State*, 298 N.E.2d 466 (Ind. App. 1973). This holding is the same as the *French* case inasmuch as it holds that the mere fact that a judge has ruled upon a showing of probable cause does not necessarily disqualify him from hearing the case. *Stiles* relied on the earlier Indiana decision of *French*. However, neither case holds that a judge need not recuse when ruling on the validity of his prior action in determining probable cause for issuance of a warrant.

The final case relied upon in the majority opinion is *Bates* v. *State*, 210 Ark. 1015, 198 S.W.2d 850 (1947). The question argued by Bates was raised for the first time in a motion for a new trial. The *Bates* Court stated: "Under the circumstances in this case, such motion comes too late. . . . In the case at bar it was not shown that the trial judge was disqualified, and furthermore the point was not raised in apt time, and was waived." One thing that is clear from *Bates* is that the basis argued for reversal on the disqualification issue was some questions and answers between the accused and the judge a few days after the arrest. Obviously such questions were the type and kind usually occurring in habeas corpus or probable cause hearings. However, there is not even a hint in the opinion that there was ever a determination of probable cause for an arrest or search warrant.

I agree with every case cited in the majority opinion on the disqualification issue. However, not one of them concerns the issue of a judge ruling on probable cause to issue a search warrant

when the same judge issued the warrant. *Bliss* was and still is the better rule.

I would reverse this case for the trial judge's prejudicial error in failing to recuse. Moreover, probable cause to support the search warrant was not shown. Without the evidence that would have been suppressed after a finding of no probable cause, Holloway could not have been convicted.

The "facial" defect in the search warrant referred to by the majority was that it did not authorize a nighttime search. That defect was fatal—not facial. Our rules of criminal procedure require that a search warrant must be served between the hours of 6:00 a.m. and 8:00 p.m., unless it is specifically authorized to be done in the nighttime. Thus, the search warrant in question should not have been served during the night. Such error is equivalent to serving a search warrant that does not contain an address or serving an arrest warrant that leaves off the name of the person to be arrested.

I am puzzled by the statement in the majority opinion that the court was given no timely opportunity to rule on an objection to the night time search or an opportunity to rule on the question of the facial defect in the warrant. A timely pre-trial motion to suppress was filed on March 26, 1986, alleging that the scope of the search exceeded that authorized by the warrant. The motion stated in part as follows:

> [T]he seizure was based on the authority of the search warrant issued as aforesaid, and the scope of the search by which things were seized or discovered, exceeded that authorized by the warrant . . . .

This specifically brought the matter of the unauthorized night-time search warrant to the trial court's attention six months before the trial. Searches during the night must be specifically authorized. This one did not authorize such a search. How could the appellant have been more specific?

The most prejudicial error in the proceedings below, however, was the failure of the trial court to sever the defendants' trials. Antagonistic defenses were apparent on the face of these charges and were evident throughout the trial. Holloway had never before been arrested. Severance should always be granted

whenever either defendant is unduly jeopardized. *McDaniel* v. *State*, 278 Ark. 631, 648 S.W.2d 57 (1983).

Practically all of the evidence indicated that the person possessing and dealing drugs was either Delcamp or Francis R. Gallant. There was not the slightest effort to limit the evidence of prior drug sales by Delcamp solely to the question of his guilt. The record does not reveal any evidence linking Holloway to the sale or possession of drugs found in the house. Holloway simply rented a room in which he had used drugs on a couple of occasions in the past. Nothing uncovered in Holloway's room established possession or sale of cocaine. The majority opinion seems to imply that usable quantities of cocaine were found in Holloway's room. There was no such evidence.

I think this issue is governed by *Osborne* v. *State*, 278 Ark. 456, 43 S.W.2d 251 (1982), where we stated: "The problem of joint occupancy arises because of the rule that when joint occupancy is the only evidence the state has, there must be some additional link between the accused and the contraband." The record showed that Holloway had no control or authority over Delcamp's house other than the room he rented. The jury had to resort to speculation, obviously influenced by the substantial evidence against Delcamp, to find that Holloway was in possession of the drugs found in Delcamp's house. The state failed to supply the missing link in a joint occupancy situation.

In the interest of justice and fair play this case should be reversed and remanded with directions to grant Holloway a separate trial.

Supplemental Opinion on Denial of Rehearing
December 14, 1987

742 S.W.2d 550

1. SEARCH & SEIZURE — SEARCH WARRANT — VALIDITY. — Where a search warrant showed that a nighttime search was authorized but the judge neglected to line out the appropriate alternative at another place on the face of the warrant, this technicality will not invalidate the warrant.
2. SEARCH & SEIZURE — SEARCH WARRANT SHOULD NORMALLY BE EXECUTED DURING THE DAY — EXCEPTION. — A search warrant

should provide for execution between the hours of six a.m. and eight p.m. unless the judge has reasonable cause to believe, among other things, that the objects to be seized are in danger of imminent removal. [Ark. R. Crim. P. 13.2(c).]

3. SEARCH & SEIZURE — NIGHTTIME SEARCH — JUSTIFICATION. — A nighttime search was justified where the judge had been told of the heavy traffic and use of drugs during the evening hours at the place to be searched, and the affidavit stated that the controlled buy of cocaine earlier in the evening had been made with photographed bills and the chances that these same bills would be in the possession of the suspects would diminish with the passage of time.

DAVID NEWBERN, Justice. Appellant Brent Kevin Holloway has correctly pointed out that our initial opinion was incorrect in stating that he had not given the trial court an opportunity to rule upon the facial validity of the search warrant which led to evidence used against him and upon his objection to the insufficiency of evidence to justify a nighttime search. Both were argued by him at a pre-trial hearing.

### The Face of the Warrant

In our original opinion we discussed the fact that the warrant at one point showed that a nighttime search was authorized although the judge neglected to line out the appropriate alternative at another place on the face of the warrant. We are satisfied that the warrant showed that a nighttime search was authorized. This sort of technical attack on the warrant is not favored. *Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987).

### Basis of Nighttime Search Order

We have no doubt that the judge could reasonably have concluded that a nighttime search was justifiable in the circumstances presented to him. The affidavit of Detective Robert Ross of the Fort Smith Police Department showed that he had learned, through information obtained in the process of making the controlled cocaine buy at the residence to be searched, that illegal drug sales were taking place there. The controlled buy had been made "during the evening hours" on the very evening the warrant was sought. It was then that the "additional quantities of

cocaine" were observed. The affidavit stated that information had been obtained that "numerous vehicles [were] coming and going from this residence especially at night."

According to Ark. R. Crim. P. 13.2(c), a search warrant will provide for execution between the hours of six a.m. and eight p.m. unless the judge has reasonable cause to believe, among other things, that "the objects to be seized are in danger of imminent removal." In *Murray* v. *State*, 275 Ark. 46, 628 S.W.2d 549 (1982), we held that a nighttime search was justified on the basis of an affidavit showing that the suspect had said he had drugs which could easily be sold. While no such statement was before the judge in this case, he had been told that the drugs had been observed in the evening hours and that that was when the traffic in and out of the dwelling to be searched was heavy. The affidavit presented to the judge also noted that the controlled buy of cocaine earlier in the evening had been made with bills which had been photographed by the police beforehand. Given the evidence that sales were occurring, and presumably currency was changing hands, it was obvious that the chances that these same bills would be in the possession of the suspects would diminish with the passage of time. We deem the totality of this information provided a sufficient basis for permitting the search after eight p.m. *See Boyd* v. *State*, 13 Ark. App. 132, 680 S.W.2d 911 (1984); *Lewis* v. *State*, 7 Ark. App. 38, 644 S.W.2d 303 (1982).

While we agree with the appellant that both these issues were presented to and ruled upon by the trial judge, we conclude his rulings on them were not erroneous. Therefore, the petition for rehearing is denied.

PURTLE, J., would grant.